**Robert N. HOULE**

v.

**GALLOWAY SCHOOL LINES, INC.**

**No. 93–338–Appeal.**

Supreme Court of Rhode Island.

June 23, 1994.

Mark Decof, Donna M. DiDonato, Decof & Grimm, Providence, for plaintiff.

Dennis J. Roberts, II, Roberts, Carroll, Feldstein & Peirce, Providence, for defendant.

## OPINION

LEDERBERG, Justice.

This civil action came before the Supreme Court on the appeal of Robert N. Houle (plaintiff) from a directed verdict granted by the Superior Court in favor of Galloway School Lines, Inc. (Galloway). A school bus owned and operated by Galloway pursuant to a contract with the town of North Smithfield, Rhode Island (town), was described as the proximate cause of an accident in which the plaintiff was injured. On appeal, the primary issue was whether the public-duty doctrine is applicable to a municipality's operation of school buses and to the design and operation of school-bus routes. For the reasons stated herein, we conclude that although the public-duty doctrine applies to the design of school-bus routes, the doc-trine does not insulate municipalities from liability for the negligent operation of school buses. Therefore, we vacate the judgment and remand this matter for a new trial.

## FACTS

On May 2, 1989, at approximately 3 p.m., Dennis J. Caron (Caron) was driving a trac-tor-trailer truck northward in the right-hand travel lane of Route 146 in the town of North Smithfield. As he approached the section of highway abutting the Country Squire Motel, where the speed limit was only thirty-five miles per hour because of road construction, Caron observed a school bus (bus) traveling ahead of his vehicle in the same right-hand travel lane. The bus, owned and vicariously operated by Galloway pursuant to a contract with the town, made a right-hand turn into an access lane that ran parallel to the right-hand travel lane; the two lanes were separat-ed by a wide, so-called chatter strip. The bus's flashing yellow lights then appeared. Although Caron hesitated to stop because of fast-moving traffic, the appearance of the bus's stop sign and flashing red lights in-duced him to bring his truck to a complete stop. Caron—now stopped in the right-hand travel lane to the left and slightly behind the school bus—glanced into his left rearview mirror where he observed a white Pontiac approaching in the travel lane to the left.

The Pontiac, driven by Ronald Nasuti (Na-suti) and occupied by plaintiff, was en route to Woonsocket, Rhode Island. As the vehicle approached the stretch of road bordered by the Country Squire Motel, plaintiff observed, and warned Nasuti about, the bus ahead. Nasuti saw the bus's flashing red lights and stopped his car in the high-speed lane along the left side and slightly ahead of Caron's trailer truck. From this vantage point, Na-suti observed the bus to his right and— looking into his rearview mirror—saw that an approaching, white step-van driven by Vincent J. Gadoury (Gadoury) was about to collide with the rear of his Pontiac. The ensuing collision pushed Nasuti's car forward into the guardrail. The plaintiff sustained serious injuries from which he has partially recovered.

On July 2, 1989, plaintiff filed a negligence action against Galloway; the town; Marion J. Allen (Allen), the driver of the bus; Gadoury; DENCO Builders, Inc. (DENCO), Gadoury's alleged employer; and Dennis R. Gignac, the alleged registered owner of the white step-van. The plaintiff settled his claims against DENCO, Gadoury, and Gignac, and his claims against Allen and the town were dismissed. The plaintiff then proceeded to trial against the remaining party, Galloway. After plaintiff rested his case, Galloway moved for a directed verdict based, *inter alia,* upon the public-duty doctrine. The trial justice granted the motion, and plaintiff filed the instant appeal pursuant to G.L.1956 (1985 Reenactment) § 9–24–1.

## STANDARD OF REVIEW

█ When reviewing a trial justice's decision on a motion for directed verdict, this court examines the evidence in a light most advantageous to the nonmoving party without regard to the weight of the evidence or the credibility of the witnesses. *Rodrigues v. Miriam Hospital,* 623 A.2d 456, 460 (R.I. 1993). We draw from the evidence only those inferences that support the nonmoving party's position. *Id.* If such an examination discloses competent, credible evidence to support plaintiff's claim against Galloway, then the motion for a directed verdict should have been denied. *See Achille v. Colonial Penn Insurance Co.,* 505 A.2d 1173, 1174–75 (R.I.1986).

## THE PUBLIC DUTY DOCTRINE

In granting Galloway's motion, the trial justice reasoned that under the public-duty doctrine, Galloway, as the town's agent, shared derivatively the town's governmental tort immunity because the designing of school-bus routes and the transportation of students to and from school are discretionary activities to which the public-duty doctrine applies. The trial justice also found the "egregious conduct" exception to the public-duty doctrine inapplicable to plaintiff's case. On appeal, plaintiff primarily argued that the public-duty doctrine does not bar his negligence claims against Galloway because the design and operation of school-bus routes are

activities engaged in by private individuals. Moreover, plaintiff maintained that the record contains sufficient evidence to bring Galloway's conduct within the egregious-conduct exception to the public-duty doctrine.

█ Individuals tortiously injured by an agent of the state or one of its political subsidiaries traditionally were barred from recovery by the doctrine of sovereign immunity. *Catone v. Medberry,* 555 A.2d 328, 330 (R.I.1989). The General Assembly statutorily abolished the doctrine in 1970 with the enactment of the Governmental Tort Liability Act, G.L.1956 (1985 Reenactment) § 9–31–1 (as enacted by P.L.1970, ch. 181, § 2): "The state of Rhode Island * * * including all cities and towns, shall * * * hereby be liable in all actions of tort in the same manner as a private individual or corporation." On the other hand, the public-duty doctrine shields the state and its political subdivisions from tort liability "arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons." *Haley v. Town of Lincoln,* 611 A.2d 845, 849 (R.I.1992). *Accord Catri v. Hopkins,* 609 A.2d 966, 968 (R.I.1992); *Bierman v. Shookster,* 590 A.2d 402, 404 (R.I. 1991); *Catone,* 555 A.2d at 333.

█ In order to prove negligence, a plaintiff first must show that the state owed him or her a legal duty, the breach of which gave rise to liability. *Haley,* 611 A.2d at 848. To determine the duty owed, it is necessary to examine the nature of the activity that gave rise to the plaintiff's claim. *Longtin v. D'Ambra Construction Co.,* 588 A.2d 1044, 1045–46 (R.I.1991). "If the activity the state was engaged in was one that a private individual typically performs, the state owes the public a duty of reasonable care and will be liable for a breach of that duty to the same extent a private individual would be." *Id.* at 1046. *Accord Haley,* 611 A.2d at 848–49; *Misurelli v. State, Department of Transportation,* 590 A.2d 877, 878 (R.I.1991). Only after a determination that the activity at issue "could not ordinarily be performed by a private person" does the public-duty doctrine and its two exceptions—the special-duty exception and the egregious-conduct excep-

tion—become considerations. *Haley*, 611 A.2d at 849. *Accord Catri*, 609 A.2d at 968. Under the egregious-conduct exception, even in cases in which a governmental action is discretionary, a plaintiff may recover for the state's negligence "when the state has knowledge that it has created a circumstance that forces an individual into a position of peril and subsequently chooses not to remedy the situation." *Verity v. Danti*, 585 A.2d 65, 67 (R.I.1991).

In the instant case, plaintiff's negligence claims against Galloway comprised three separate counts. Two of the counts were premised upon the allegation that Allen had failed to exercise due care in operating the bus, and the third count alleged that Galloway had negligently designed the bus route that Allen had been following at the time of plaintiff's accident. Viewing the evidence in the light most favorable to plaintiff in respect to plaintiff's first two counts, we are of the opinion that plaintiff has presented competent, credible evidence to establish a genuine issue of material fact concerning Allen's negligence and, in turn, the liability of Galloway. We also conclude that plaintiff's third count raises a genuine issue of material fact as to the applicability of the egregious-conduct exception to the public-duty doctrine. We first address the potential liability arising from Allen's allegedly negligent operation of the bus.

■■■ It is well established in this jurisdiction that as the owner or operator of motor vehicles, the state and its political subdivisions perform the same activities that a private individual might perform. *O'Brien v. State*, 555 A.2d 334, 337 (R.I.1989). Thus, even though the public-duty doctrine generally precludes the imposition of liability for discretionary governmental activities, municipalities and their agents are not immune from liability for injury caused by the negligent operation of motor vehicles. *See Catone*, 555 A.2d at 334. Therefore, government employees or agents who operate motor vehicles owe to the public at large the same duties that would be imposed upon any private individual or corporate entity. *O'Brien*, 555 A.2d at 337. Agents of the state must, like all other citizens, "operate their vehicles in a reasonably safe manner and avoid creating foreseeably unreasonable risks of harm to the motoring public." *Catone*, 555 A.2d at 334.

■■■ On the basis of these precedents, we conclude that in the course of operating a school bus on Route 146 in North Smithfield, Allen owed plaintiff a duty to conduct herself in a reasonably prudent manner. The record contains sufficient evidence to establish that at the time of the accident, Allen was an employee of Galloway's acting within the scope of her employment. Therefore, her alleged failure to act with due care could result in Galloway's being found vicariously liable to plaintiff. *Becker v. Beaudoin*, 106 R.I. 562, 564, 261 A.2d 896, 898 (1970); *Smith v. Raparot*, 101 R.I. 565, 566, 225 A.2d 666, 666 (1967). Accordingly, the issue of Allen's negligence in operating the bus and Galloway's vicarious liability should have been submitted to the jury.

We next consider whether Galloway may be held liable for the allegedly negligent design and adoption of the bus route on which Allen drove the bus. Unlike the operation of a school bus, the design and implementation of a public school bus route is an activity not ordinarily engaged in by private individuals. *See Longtin*, 588 A.2d at 1046 (reconstruction of state highway is activity performed exclusively by state); *Polaski v. O'Reilly*, 559 A.2d 646, 647 (R.I.1989)(placement of traffic-control devices is an activity that private persons are precluded from undertaking); *Orzechowski v. State*, 485 A.2d 545, 549 (R.I.1984)(paroling of felons is activity private individuals may not undertake). Because the design of a municipal school bus route is a "discretionary" governmental activity, the public-duty doctrine may protect the town, and derivatively Galloway, from liability in respect to plaintiff's third count of negligence.

In accordance with the provisions of G.L. 1956 (1988 Reenactment) § 16–21–1(a), municipalities are required to furnish public-school and nonprofit-private-school students with appropriate transportation to and from school in those cases in which their regular attendance at school "would be impractical * * * because of the distance they would

have to travel." *Brown v. Elston*, 445 A.2d 279, 283 (R.I.1982). By the terms of this statute, municipalities must provide school-bus service to each such pupil's residence that is located beyond a reasonable walking distance from the school. *See id.* The design of a bus route, then, is subject to variables such as the location of students' homes. Although the design of school-bus routes by a community in fulfillment of its obligations under § 16–21–1(a) may be among those discretionary governmental activities shielded by the public-duty doctrine, *see Barratt v. Burlingham*, 492 A.2d 1219, 1222 (R.I.1985), plaintiff is not necessarily precluded from recovering for the negligent design of the bus route at issue.

 Our review of the record disclosed sufficient evidence to bring plaintiff's third claim against Galloway within the egregious-conduct exception to the public-duty doctrine. *See Verity*, 585 A.2d at 67. Caron, for example, testified that upon observing that the bus had stopped, he became confused and did not know whether he was required to stop his truck. When the truck did stop, it rested in the path of vehicles, including plaintiff's, traveling at an estimated forty-five to fifty-five miles per hour. Furthermore, Allen's testimony provided evidence that Galloway, through one of its agents, required Allen to stop in the breakdown lane of Route 146 even though the Country Squire Motel had a circular driveway adjoining this lane. Allen also testified that on numerous occasions as early as two years prior to the accident, she had informed her "boss" of the dangers she had experienced when stopping "in front of [*sic*] the Country Squire Motel." The record reveals, however, that no action was taken to alleviate the perils of stopping at that location. We are of the opinion that this evidence presents a question of fact in respect to whether the elements of egregious conduct have been established. *See Haley*, 611 A.2d at 849.

For the forgoing reasons we sustain the plaintiff's appeal and vacate the judgment of the Superior Court. The papers in the case are remanded to the Superior Court for further proceedings in accordance with this opinion.