## Robert SCHULTZ, Individually and as Parent and Next Friend of Patricia M. Schultz, a minor

v.

## FOSTER–GLOCESTER REGIONAL SCHOOL DISTRICT et al.

No. 98–564–Appeal.

Supreme Court of Rhode Island.

July 12, 2000.

James P. Marusak, Providence, for Plaintiff.

Mark J. Faria, Raymond A. Lafazia, Jeanne E. Lafazia, Kevin J. Holley, Providence, for Defendants.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court on the appeal of plaintiff, Robert Schultz (Schultz or plaintiff), individually and as parent and next friend of Patricia M. Schultz, from a Superior Court judgment entered in favor of defendant, Foster–Glocester Regional School District (Foster–Glocester or defendant), following defendant's motion for summary judgment. Following a conference before a single justice of this Court, the parties were directed to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda submitted, we are of the opinion that cause has not been shown. Therefore, we shall decide the issues raised by the parties at this time.

On January 7, 1993, plaintiff's daughter, Patricia Schultz (Patricia), was injured during a cheerleading practice while she was a student at the Ponaganset Middle School. Patricia, who was fourteen years old at the time of the accident, said that during cheerleading practice, a new maneuver called a "basket toss" was introduced. It required that she be thrown upward into the air by two other cheerleaders and, after extending both her hands and feet, that she land in the interlocked hands of those two cheerleaders. Unfortunately, the maneuver did not go according to plan. Patricia said that she was tossed improperly and fell when she landed, missing the safety mat and injuring her elbow. Patricia said she went to the school nurse who, after manipulating the injured elbow, sent her back to practice. According to Patricia, she then continued to participate in practice, performing what she described as painful physical activities until she stopped and went home. Patricia, in her answers to interrogatories,

stated that as a result of her fall, she suffered a 100 percent displaced radia head fracture of her right elbow.

On December 27, 1996, plaintiff filed suit, alleging that Foster–Glocester was negligent in failing to properly train, supervise, instruct, provide proper equipment and provide proper post-injury treatment for Patricia during and after cheerleading practice. On March 19, 1998, Foster–Glocester filed a motion for summary judgment, arguing that the public-duty doctrine was a bar to recovery. On June 2, 1998, the trial justice granted the motion, finding that Patricia was not an identifiable person to whom the school district owed a special duty and that no exceptions to the public-duty doctrine were applicable in this case. On June 5, 1998, plaintiff filed this timely appeal.

On appeal, plaintiff argued that the trial justice erred by determining that the public-duty doctrine applied to bar plaintiff's claim and that Foster–Glocester owed no special duty to plaintiff. Also, plaintiff contended that the trial justice erred in finding that none of the exceptions to the public-duty doctrine applied to her claim. Foster–Glocester asserted that the public-duty doctrine shielded it from liability, and that if the doctrine did not apply, the coach enjoyed immunity pursuant to G.L.1956 § 9–1–48.[1]

■ "The public duty doctrine shields the state and its political subdivisions from tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons." *Haley v. Town of Lincoln*, 611 A.2d 845, 849 (R.I.1992) (citing *Bierman v. Shookster*, 590 A.2d 402, 403 (R.I.1991)). We have consistently held that this immunity enjoyed by state and municipal governments is applicable to governmental functions, except in three situations: "(1) when the governmental entity owes a 'special duty' to the plaintiff, (2) when the alleged act or omission on the part of the governmental entity was egregious, or (3) when the governmental entity engaged in activities normally undertaken by private individuals or corporations." *Kuzniar v. Keach*, 709 A.2d 1050, 1053 (R.I.1998) (citing *Quality Court Condominium Association v. Quality Hill Development Corp.*, 641 A.2d 746, 750 (R.I.1994); *Haley*, 611 A.2d at 849; *Catone v. Medberry*, 555 A.2d 328, 333 (R.I.1989)).

■ The special-duty rule provides that governmental entities will be liable for actions taken in the course of their public functions when "the plaintiffs have had some form of prior contact with state or municipal officials 'who then knowingly embarked on a course of conduct that endangered the plaintiffs, or they have otherwise specifically come within the knowledge of the officials so that the injury to that particularly identified plaintiff can be or should have been foreseen.'" *Kuzniar*, 709 A.2d at 1054 (quoting *Quality Court Condominium*, 641 A.2d at 750). We are of the opinion that the trial justice erred in finding that Patricia was not an identifiable person to whom the school district owed a special duty. In *Kuzniar*, we stated that the special-duty doctrine is triggered when the plaintiff establishes the following circumstances: "(1) one or more

1. General Laws 1956 § 9–1–48 provides in pertinent part:
    "**Immunity from civil liability—Sports teams.**— * * *
    (b) Notwithstanding any provisions of law to the contrary, except as otherwise provided in subsection (c) of this section, no person who renders services as a manager, coach, instructor, * * * in an interscholastic or intramural sports program organized and conducted in accordance with and subject to the rules, regulations, and jurisdiction of the Rhode Island interscholastic league, the committee on junior high school athletics, and/or the board of regents for elementary and secondary education shall be liable to any person for any civil damages as a result of any acts or omissions in the rendering of such services or assistance unless the acts or omissions of the person were committed in willful, wanton, or reckless disregard for the safety of the participants in the interscholastic or intramural sports program."

city officials had some form of prior contact with or other knowledge about [the injured] or her situation before the alleged negligent act * * * occurred, (2) city officials thereafter took some action directed toward [the injured] or her interests or failed to act in some way that was potentially injurious to [the injured's] person or property, and (3)[the] injury * * * was a reasonably foreseeable consequence of the city's action or inaction." *Kuzniar*, 709 A.2d at 1056.

■ In the instant case, it is clear that the school district was aware of Patricia, and knew of her cheerleading exploits. Patricia was both a student at the school and a member of the cheerleading squad. Further, the squad was composed of a small group of cheerleaders that had been practicing together for months; clearly the cheerleading coach knew of, and engaged in a relationship with, Patricia. Thus, we are satisfied that Patricia's injury was sufficiently foreseeable to trigger the special-duty doctrine and ultimately liability on the part of the school district. Although there may have been some risk, there is always risk involved in cheerleading maneuvers. However, the particular maneuver in this case may well involve the doctrine of assumption of the risk. This doctrine cannot be applied in the context of summary judgment, and must be submitted to the trier of fact.

Consequently, the plaintiff's appeal is sustained and the summary judgment entered is vacated. We remand this case to the Superior Court for a trial on the merits relating to the question of assumption of the risk by the minor.